# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3767

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri. |
| | * | |
| Gregory D. Goodall, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: November 15, 2005
Filed: March 31, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

PER CURIAM.

Gregory Goodall appeals his conviction for conspiracy to manufacture fifty grams or more of methamphetamine, arguing that the district court erred by not granting his motion for acquittal. We affirm.[1]

Gregory Goodall was charged with conspiracy to manufacture fifty grams or more of methamphetamine, possession of pseudoephedrine with intent to manufacture

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

methamphetamine, and possession of a stolen firearm. At the close of evidence, Goodall moved for acquittal on all three counts, and the district court granted the motion as to possession of a stolen firearm. The jury found Goodall guilty of the other charges. Goodall appeals his conviction for conspiracy to manufacture fifty grams or more of methamphetamine.

Goodall challenges the sufficiency of the evidence following a jury verdict. Thus, we view "'the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict.'" United States v. Cook, 356 F.3d 913, 917 (8th Cir. 2004) (quoting United States v. Sanders, 341 F.3d 809, 815 (8th Cir. 2003)) . We reverse only if no reasonable jury could have found Goodall guilty. Id. (citation omitted).

To establish that Goodall conspired to manufacture methamphetamine, the government must prove: (1) that there was a conspiracy, i.e., an agreement to manufacture methamphetamine; (2) that Goodall knew of the conspiracy; and (3) that Goodall intentionally joined the conspiracy. United States v. Espino, 317 F.3d 788, 792 (8th Cir. 2003) (citations omitted).

At trial, the government offered sufficient physical evidence to prove that methamphetamine-manufacturing activities were afoot at Goodall's residence. The government showed that Goodall's trash, garage, and house contained drug paraphernalia; liquid methamphetamine mixtures in different stages of manufacture; methamphetamine residue; marijuana; two methamphetamine precursors–pseudoephedrine and ephedrine; and the following items used to manufacture methamphetamine: rubber gloves with unusual staining, coffee filters, pH testers, empty pseudoephedrine bottles, a cloth diaper with pill binder, red phosphorous, iodine, acetone, Red Devil lye, a scale commonly used to weigh narcotics, cat litter to mask the odor, and gas line dryer.

Karen Parmely testified that Sandy, Goodall's girlfriend and cohabitant, helped move methamphetamine equipment and chemicals to the shared residence in May 1999. Prior to May 1999, Parmely also performed a methamphetamine "cook" at Goodall's house with him present and finished a "cook" there another time when he was not present. She also stored equipment in the garage. Parmely also testified that she was present at Goodall's house twice when David Caray made methamphetamine. Parmely began recovering from her methamphetamine addiction on January 7, 2000, and knew nothing of drug activities in 2000.

David Caray testified that he went to Goodall's house in 1998 and manufactured methamphetamine then. Sandy had given him permission to use the residence, and Goodall supplied some acetone. Caray testified that a trunk of methamphetamine-manufacturing equipment found in the garage in September 2000, belonged to a man named P.D.

Caray also testified that September 2000 "might have been about the time that I hauled that other stuff over to his house from a previous cook." He explained that he had been manufacturing methamphetamine at someone's else house. The person who lived there was irate about what was going on, so Caray took his equipment to Goodall's house. Caray testified that he had Goodall's permission.

Given the large amounts of physical evidence found in Goodall's garage, Parmely's testimony about her previous activities at Goodall's house, and Caray's testimony that he took methamphetamine-manufacturing equipment to Goodall's house in September 2000, we cannot say that the jury was unreasonable in concluding that Goodall conspired to manufacture methamphetamine.

For the foregoing reasons, we affirm.

_____